## SUPREME CONCLAVE, IMPROVED ORDER OF HEPTASOPHS OF BALTIMORE CITY *vs.* JOSHUA W. MILES et al., Administrators of N. J. P. TULL.

*Life Insurance— When Suicide is a Defense to an Action on the Policy—*
*Mutual Benefit Society—Evidence.*

When a policy of life insurance, which is payable to a beneficiary, contains no provision avoiding it in the event of the suicide of the assured, then the killing of himself while sane by the assured is not a defense to an action on the policy, when it is not shown that he obtained the policy with the intention of committing suicide.

A mutual benefit society issued its certificate of membership to A by which it promised to pay a certain sum in the event of his death to the plaintiff, A's father. Neither the certificate nor the charter contained any condition exempting the society from liability in case A's death was caused by suicide. The assured killed himself shortly after becoming a member. In an action on the policy, *held*, that the jury was properly instructed that the suicide of the assured is no bar to a recovery by the plaintiff, unless the jury find that the assured, when he applied for membership, did so with the intention of committing suicide, and that the burden of proving such intention is on the defendant.

In an action against a mutual benefit society, the admission in evidence of a preliminary application for membership, which was not in the form prescribed by the charter, is a harmless error, of which the defendant is not entitled to complain, when the official and authorized application upon which the member was admitted to the order, is also produced in evidence, and where the question is whether the applicant became a member with the intention of committing suicide.

In such action, no injury was done to the defendant by the admission in

evidence of a letter by the secretary of the defendant to the plaintiff, acknowledging the receipt of proof of death of the member, when there is no question in the case as to the sufficiency of the proof of death.

In an action to recover death benefits from a society, where defendant had offered evidence to show that the deceased had the intention of taking his life when he became a member of the order, the plaintiff, in rebuttal, may ask a witness who had an opportunity to observe the deceased, what his condition was the day before the suicide, the tendency of the question being to show that the suicidal purpose had overtaken the deceased subsequent to his application for membership. .

Appeal from the Superior Court of Baltimore City (HARLAN, C. J.)   The defendant's third prayer asked the Court to instruct the jury that if they find from the evidence that benefit certificate No. 57103 was issued by the defendant company Miles Tull, in which N. J. P. Tull was named as beneficiary on the 5th day of August, 1898, and that if they further find that prior to the issuance of said benefit certificate to the said Miles Tull, to wit, on the 2nd day of August, 1898, he, the said Miles Tull, expressed the intention of not returning to his then home alive if he got no position ; and that if they further find that he, the said Miles Tull, left his home in Marion on the evening of the 4th of August, 1898, for Baltimore ; and if they further find that he obtained no position ; and if they further find that on the 18th day of August, 1898, while of sound mind, he, the said Miles Tull, deliberately took his own life by the infliction of a pistol shot wound in the head, that there can be no recovery, although they may further find that there is no suicide provision in the by-laws of the defendant company. *Refused.*

Defendant's fourth prayer instructed the jury that if they find that Miles Tull was admitted as a member of Marion Conclave Improved Order Heptasophs on the 3rd day of August, 1898; that he applied for a benefit certificate which was granted by the Supreme Conclave of Improved Order Heptasophs for $5,000, for which he paid the sum of $2.50, which was issued on the 5th day of August, 1898; that he left his home in Marion, in Somerset County, Maryland, on or about the 4th day of August, 1898; that he declared that he was going to

Baltimore to get a job, and if he did not get one, that he would never return home alive; that he came to Baltimore on or about the 5th day of August, 1898; that he took a room at 908 McCulloh street; that he failed to get any job; that on the 17th day of August, 1898, he inquired of the landlady of the house if there was any mail for him, but was informed there was none; that on the 18th day of August, 1898, early in the morning a large envelope was received by mail at said house and delivered to him about 9 o'clock, A. M., on the same morning, and that on the said 18th day of August, 1898, he committed suicide while of sound mind; that he wrote the letters to E. E. Tarr and Gussie Haynes given in evidence; that he wrote his father, the beneficiary named in said certificate, a letter before his death, which the father received but which cannot now be found, then the plaintiff cannot recover in this action.    That he was impelled to the act by circumstances which others did not know; and if from all the evidence the jury shall find that the deceased entered into the contract described in the benefit certificate with the intention of committing suicide, then the plaintiff cannot recover in this case. *Refused.*

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Olin Bryan* for the appellant:
There is no evidence to warrant any other conclusion than that the assured was of sound mind at the time of his death.    In the absence of evidence he must be presumed to have been sane, and this presumption is not overthrown by the act of committing suicide.  *Ritter* v. *Mutual Life Insurance Company*, 169 U. S. 139.    The *onus* of showing insanity was upon the plaintiffs; this they utterly failed to do.    The testimony of all the witnesses is conclusive as to the sanity, rather than tending in any way to indicate unsoundness of mind.    If Miles Tull understood what he was doing and the consequences of his act or acts to himself as well as to others; in other words, if

he understood, as a man of sound mind would, the conse-
quences to follow his contemplated suicide to himself, his char-
acter, his family and others, and was able to comprehend the
wrongfulness of what he was about to do, as a sane man would,
then he was to be regarded as sane, otherwise not.    169 U.
S. 139 *supra*.    The two letters are absolutely conclusive as to
the fact that he was sane, as also the testimony of Mrs. Haley,
when last seen by her.    The pertinent query then is, was the
benefit certificate, under which the plaintiffs claim, rendered
*void* by Miles Tull committing suicide while of sound mind?

The question now comes before this Court for the first time.
This case is nearly in every essential feature parallel to the
*Ritter case*.    It differs in two particulars only, one is that in
that case, the policy was payable to the estate, *while* in this it
is payable to a third party; the other is, that the case was a
Mutual Insurance Company, and this is a Fraternal Benefici-
ary Association, which, as we shall show, is a stronger case
even than the *Ritter case*.    When, however, we notice ths
"suicide" renders the contract itself *void*, it of necessity de-
stroys all rights that might exist under it, without reference at
whom payable.    If the United States Supreme Court has an-
nounced a correct view in case of suicide, it is as applicable in
this case as it was in the *Ritter case*, if not even more so.
See also *Hopkins* v. *N. W. Life Ins. Co.* 94 Fed. Rep. 729.

It is a general principle of Fraternal Beneficiary Associa-
tions that the beneficiary named in a benefit certificate acquires
no vested right in the benefit fund until the death of the mem-
ber.    *Niblack*, sec. 202; *Washington Assn.* v. *Wood*, 4 Mackey
(D. C.) 19; *Niblack*, page 406 (bottom of page); *Masonic Mu-
tual Benefit Society* v. *Burkhart*, 110 Indiana, 192; *Splown* v.
*Chew*, 60 Texas, 532; *Expressman's Aid Society* v. *Lewis*, 9
Mo. App. 412; *Ballou* v. *Gile*, 50 Wis. 614; *District* v. *Mad-
ison Relief, etc.*, 45 Wis. 79; *Richmond* v. *Johnson*, 28 Minn.
447.    This expectancy is not property.    *Burkhart case, supra*;
*Durian Central Verein*, 7 Daly, 168; *Tennesse Lodge* v. *Lodd*,
5 Lea. 716; *Swift* v. *Railway, etc.*, 96 Ill. 309; *Knights* v.
*Watson*, 64 N. H. 517.    The plaintiff is in no better condition

in respect to the benefit certificate than if the personal representatives of Miles Tull had been designated. *Smith* v. *National Benefit Society of N. Y.*, 51 Hun. 577.

Wilfull self-destruction by the insured, when he is sane, is a fraud on the insurer, whether the purpose to commit the act was formed before or after the policy is taken out, and that, too, without reference to whether there is a suicide clause or not. *Hartman* v. *Keystone Insurance Company*, 21 Pa. 479.

The third and fourth prayers of the defendant present the proposition based upon the facts, if found as stated, that where there was an intention, prior to the issuance of the benefit certificate, upon the part of the insured, which indicated the probability of his taking his life, followed by suicide, that then it was apparent that at the time of the contract the intention existed to end life upon certain conditions. As to the proposition of law announced in these prayers there seems little, if any question, for certainly no Court would permit one to take out insurance, having, at the time the insurance was issued, the intention of taking his life, and this is the hypothesis upon which these prayers were based.

*Alonzo L. Miles* and *J. B. Mills* (with whom was *A. P. Gorman, Jr.*, on the brief), for the appellees :

Where a person insures his life in a mutual benefit society for the benefit of a *third person*, named as beneficiary in the policy, and the contract of insurance is silent upon the subject of suicide does the taking of his own life by the insured defeat the claim of the beneficiary ?

The Court below held that it does not, unless it is further shown that at the time the insured took out the policy he did so *with the intention of committing suicide*, and this is our contention. In the case of *Ritter* v. *Mutual Life Ins. Co.*, 70 Fed. Rep. 954, and 17 U. S. C. Ct. 537, relied upon by the appellant, this question was not involved. There the Court held that where a person insures his life for the benefit of *his estate* and deliberately kills himself while sane, his *personal representatives* cannot recover upon the policy, even though there

is no condition against suicide. But it makes a distinction, as do all the authorities upon the subject, between that case and a case in which a policy is taken out for the benefit of a *third person*, and there is no stipulation that it shall be void in case of suicide. In the latter class of cases the authorities uniformly hold that suicide is no defense unless the insured contemplated suicide when he took out the policy. *Joyce on Insurance*, sec. 2653; *Morris* v. *Life Assurance Co.*, 183 Pa. 563; *Fitch* v. *American Life Ins. Co.*, 59 N. Y. 557; *Darrow* v. *Family Fund Society*, 116 N. Y. 537; *Kerr* v. *Mutual Ben. Assn.*, 39 Minn. 174; *Mills* v. *Rebstock et al.*, 29 Minn. 380.

If suicide is no defense in a case where a person takes out a policy for the benefit of a third person in a regular insurance company, where he may or may not insure for the benefit of his estate, *a fortiori*, it is no defense upon a policy taken out in a mutual benefit society organized and incorporated for the avowed purpose of protecting, *not the insured, but the third person* named as beneficiary.

JONES, J., delivered the opinion of the Court:

This suit was instituted in the Court of Common Pleas of Baltimore City against the appellant, a Mutual Benefit Association, duly incorporated under the laws of Maryland, by one Nathan J. P. Tull to recover the amount of a benefit certificate issued by the said corporation to one Miles Tull, a son of the plaintiff, and made payable to the plaintiff. Pending the suit the said plaintiff died, and the appellees here, upon suggestion of his death, became parties plaintiff as administrators of his estate. The *narr.* in the case consisted of two counts, in each of which, after setting forth matter of inducement, it was alleged that the defendant made and delivered to said Miles Tull its certificate in writing and under seal by which it promised and bound itself to pay to the plaintiff out of its benefit fund, within sixty days from the receipt of satisfactory proof of death of the said Miles Tull, and upon the terms and conditions stated in said benefit certificate, the sum of five thousand dollars. It was then

alleged that the said Miles Tull had died while a member in good standing of said corporation, and that proof of his said death had been furnished the defendant in accordance with the requirements of said benefit certificate, but the defendant had refused payment of the sum so agreed to be paid.

The defendant pleaded: 1st, that it did not promise as alleged; 2nd, that it was not indebted as alleged; 3rd, that it did not make its certificate of insurance as alleged; 4th, that the death of said Miles Tull was "caused by one of the causes exempting said defendant from liability"; 5th, that "said Miles Tull came to his death by a pistol shot deliberately aimed by his own hand, the manner of which death exempts the defendant" from liability under said benefit certificate; 6th, that defendant never undertook by the said benefit certificate to pay the sum therein named to the beneficiary named, or to any one else upon the death of Miles Tull, if his "death was produced by his own unlawful act," and that said Miles Tull came "to his death in an unlawful manner by his own hand," and the defendant was therefore exempt from liability on account of said benefit certificate; 7th, that defendant denied that it had promised and bound itself to make payment as alleged to the plaintiff, but that said promise was made upon the implied condition that the death of Miles Tull should result from causes which he could not control, and that his death was caused by his own deliberate, unlawful act, wherefore the defendant was released from every obligation on account of said benefit certificate, and the same was rendered null and void.

The plaintiff joined issue on the first, second and third pleas, traversed the fourth plea, and replied to the fifth, sixth and seventh pleas that the defendant is a mutual benefit association incorporated under the laws of the State, the object and purpose of which is to "provide an endowment fund to be paid to the family or friends of a deceased member"; that by the benefit certificate, the cause of action in the case, the defendant agreed to pay to the plaintiff the sum of $5,000 as stipulated therein; that there is nothing

expressed in the certificate "whereby suicide or any other cause of death should exempt the defendant from liability" thereunder, and "there was ·no implied condition that the said Miles Tull should come to his death from causes which he could not control, or that if he came to his death by his own unlawful act, the defendant should be released and exempted from liability" to the beneficiary named in the certificate, and "therefore the obligation or promise of the defendant was not rendered null and void by the manner in which the said Miles Tull is alleged to have come to his death." The defendant joined issue upon the plaintiff's replications. No question was made upon the pleadings, and therefore they are not the subject of criticism here ; but they have been referred to because they make more distinct the propositions upon which the Court must pass in disposing of questions subsequently presented.

The plaintiffs offered in the trial of the case proof of the benefit certificate declared upon in the *narr.* as the cause of action, the charter, constitution and by-laws of the defendant, the application of Miles Tull for membership in the defendant corporation, proof of his death and of notice thereof sent to the defendant as required by its by-laws ; and that at the time of his death he was a member of the defendant corpora- tion in good standing as defined in said laws. The defendant offered no evidence in denial or contradiction of that offered on the part of the plaintiff, but directed its proof to establish the averment of its pleas that Miles Tull had died by his own hand ; and in that connection offered some evidence as tend- ing to prove that he had made application for membership of the defendant corporation and become a member thereof, and obtained the benefit certificate therefrom upon which the suit was brought, with the intent to commit suicide. The plain- tiffs offered evidence in rebuttal of this last mentioned evidence on the part of the defendant. It nowhere appeared in the evidence that there was any condition annexed to, or made a part of, the benefit certificate sued on here, either by its own terms, or by any express provision in the charter,

constitution or by-laws of the defendant corporation, that suicide should exempt the defendant from liability thereunder; nor was there evidence going to show, and it is not claimed, that Miles Tull was not of sound mind at the time of his death.  Upon this state of proof the Court below instructed the jury in substance on behalf of the plaintiffs that if they found the facts offered in evidence by the plaintiffs they were entitled to recover, notwithstanding they might find that Miles Tull committed suicide, unless they should believe that at the time he made application for the benefit certificate sued on he did so with the intention of committing suicide, and that the burden of proving such intention was upon the defendant.

The main contention in the case is in regard to the proposition of law so asserted.  Before making further reference to the instructions of the Court, however, the exceptions appearing in the record will be reviewed in their order.  There were three exceptions taken on the part of the defendant to the admissibility of testimony.  The first of these was to the action of the Court in allowing the plaintiff to offer in evidence what is styled the preliminary application of Miles Tull to be admitted to membership in the defendant corporation.  This application does not conform to the requisites prescribed for an application for membership by the by-laws of the defendant, nor does it appear that authority is conferred upon a subordinate conclave of the order to prescribe any additional or different form of application from the one required in these by-laws.  The offer of this preliminary application may therefore have been unnecessary, or of itself may not have been the proper evidence of application for membership.  It is not perceived, however, how the defendant was injured by the admission of this evidence.  It was followed up by the offer in evidence of the official and authorized application for membership upon which the member in question was admitted to the defendant order, and upon which the benefit certificate sued on was issued to him; and the fact that Miles Tull made application in the prescribed form and thereupon became a

member of the defendant corporation is not controverted. Obviously, therefore, no injury was done to the defendant by admitting evidence of this preliminary application because the same was unnecessary or was not in the prescribed form.    It was but cumulative testimony to an uncontroverted fact. Again this preliminary application was dated July 13th, 1898. It appears to have been received by the subordinate conclave of which the applicant became a member, and to which it was addressed on the 27th, of the same month.    The official application was dated August 1st, 1898, and on the 3rd of the same month the applicant was duly elected a member of the order.    It was therefore a circumstance leading up to, connected with, and reflecting upon, the execution by the applicant of the official application and his admission to membership of the order.    At the time that this evidence was offered no question had been made in the cause as to Miles Tull having applied for the benefit certificate, which is the cause of action, with a view to suicide. As has been seen, this issue was not made in the pleadings.  But after this preliminary application had been admitted in evidence the defendant offered in evidence acts and declarations of the said applicant with the purpose of showing (and so tending) that the benefit certificate had been taken out by him with a view to suicide.   These acts and declarations were all subsequent to the date of the official application. The facts in connection with the preliminary application thereupon became legitimate matter for the consideration of the jury, who were entitled to have all the facts and circumstances connected with the applicant's becoming a member of the defendant corporation before them in passing upon this question of intention.   This being so, the fact that it was introduced into the case at a time when the propriety or necessity for it had not become apparent worked no injury to the defendant. The defendant cannot fairly claim, as was suggested on its behalf, that it was prejudiced by this evidence because of the terms of the instruction which has been referred to as granted on behalf of the plaintiffs, to the effect that the suicide of Miles Tull was not a bar to recovery by the plaintiffs in this

case unless the jury found "that at the time" he "made application" for the benefit certificate sued on "he did so with the intention of committing suicide," because the jury may have been misled thereby into believing that the intention to commit suicide must have antedated the preliminary application offered in evidence. It is not apparent how the jury could have been so misled. This preliminary application was not offered, and could hardly have been understood as having been offered, as the effective application in procuring the benefit certificate in question to be issued. The effective and official application was in evidence, and it was distinctly testified to before the jury that it was upon this last-mentioned application that the benefit certificate was issued. The other was spoken of as a preliminary application, and was distinguished by the witness who produced it from the "regular applications." Upon this state of evidence before the jury it cannot be said that they were misled into supposing that the language of the instruction which has been quoted required them to have reference to the date of the preliminary application as the time when the intention of the applicant to commit suicide, if they found such intention must necessarily have been formed. There is, therefore, no ground for reversal in the defendant's first exception.

The defendant's second exception was to the ruling of the Court in admitting in evidence a letter written to N. J. P. Tull, the beneficiary named in the benefit certificate sued on, by the supreme secretary of the defendant order, and dated at the office of the supreme secretary in Baltimore, which acknowledged the receipt by the said secretary of "the official proof of death of Miles Tull," and purported to be in reply to a letter of the said beneficiary. It is not necessary to notice this ground of exception further than to say that whatever view may be taken of the admissibility of the evidence excepted to the defendant was not injured by the action of the Court in admitting it. The supreme secretary himself was the witness who identified and proved the letter. He, under the by-laws of the defendant, was the officer to whom the proofs of the

death of a member were to be transmitted. The letter was produced in connection with his oral testimony to the effect that he had with him the proofs of death of Miles Tull which he exhibited. No question seems ever to have been made of the fact of proof of death having been forwarded, or of its sufficiency under the by-laws of the defendant. What possible harm therefore could the admission contained in the letter excepted to have done the defendant? This exception, therefore, cannot be sustained.

The same is to be said of the third and last exception to testimony. This was taken to the ruling of the Court in allowing an inquiry by the plaintiffs of a witness offered by them in rebuttal as to the apparent condition of Miles Tull when seen by the witness the day before his death. The defendant, with a view to showing that the said deceased when he made application to become a member of the defendant corporation, did so with the intention to commit suicide, had offered evidence of the acts, declarations and conduct of the deceased from the time of his making the application to the time of his death. The plaintiffs in rebuttal produced a witness who had seen and had opportunity to observe the acts and conduct of the deceased during the period covered by this testimony of the defendant; and having shown by the witness this opportunity for observing the manner and conduct of the deceased, and that the witness had seen and been with him the evening of the day before his death, asked the question, "what did his condition seem to be that Wednesday night when he left; was it different at all from his usual condition, and if so how, different?" The question at issue was the existence *vel non* of an intention or purpose in the mind of the deceased at a particular time, to wit: A purpose to commit suicide at the time of his application to the defendant for the benefit certificate sued on in this case. The design and tendency of the question asked the witness were to show that the suicidal purpose in question was due to a condition that had overtaken the deceased subsequent to the time of his said application; and though probably the evidence elicited thereby

had but slight probative value, it was competent evidence to go to the jury for what it might be worth in rebuttal of the evidence on the part of the defendant in this connection which has been alluded to.   It was not a question requiring the skill of an expert for an intelligent answer, as the defendant's counsel seemed to argue, but one that admitted of such answer by anyone who had the means of observing the deceased which it appeared the witness had.

The defendant's fourth and last exception was taken to the action of the Court upon the prayers.   The plaintiffs offered six prayers of which the Court below granted the first, third and fifth, and refused the others.   The defendant offered five prayers, all of which were refused.   The proposition of law embodied in the first and third prayers of the plaintiffs has already been stated, and is to the effect that suicide by Miles Tull, the assured in the benefit certificate sued on, is no bar to a right of recovery in the case by the plaintiffs unless the jury should find from the evidence that the said assured, when he made application for the benefit certificate, did so with the intention of committing suicide and the burden of proving such intention is upon the defendant.   The first, second and fifth prayers of the defendant asked that the jury be instructed that if the insured, Miles Tull, committed suicide when of sound mind the plaintiffs were not entitled to recover, even though there was no clause in the benefit certificate issued to him rendering the policy void by reason of suicide ; and that the act of suicide "rendered void the contract" between him and the defendant "for that there was no insurance against suicide," though this was not expressed in the contract as a condition of the insurance.

It is not entirely clear what is the precise proposition intended to be embodied in the defendant's 3rd and 4th prayers. In each of them it is asserted that the plaintiffs are not entitled to recover if the jury find the facts set out, and the fact that suicide was the cause of death.   But it is not pointed out in either of them what relation the jury must find between the other facts set out and the fact of suicide.   The facts set out,

other than the fact of suicide, were those which the defendant had put in evidence to show that the assured had made application for the benefit certificate sued on with the intention of committing suicide. This intention, if found to exist, would be a fact in the case not established by direct and uncontroverted proof but by inference from other facts which were in evidence ; and if it was meant by these prayers to have the jury instructed as to the effect of such intention upon the plaintiffs' right of recovery, the fact of the existence of such intention ought to have been left to the jury to find ; whereas the effect of the instructions as framed was to tell the jury that if they found the facts set out, other than the fact of suicide, they must accept them as proof that the application of the assured was made with the intention to commit suicide. In other words that as matter of law these facts if found constituted such intention. The fourth prayer has the concluding paragraph that "if from all the evidence the jury shall find that the deceased entered into the contract described in the benefit certificate with the intention of committing suicide, then the plaintiffs cannot recover in this case ;" but this hypothetical paragraph is inconsistent with the preceding part of the prayer in which it is affirmed, just as it is in the third prayer, that if the jury find the facts set out and the fact of suicide, then the plaintiffs are not entitled to recover. It may be here said that the defendant did not make the fact of intention upon the part of the assured to commit suicide when he made application for membership in the corporation a ground of defense in its plea ; but, nevertheless, having offered evidence of such fact it had the benefit of having the jury instructed in the prayers granted on behalf of the plaintiffs to consider the evidence so offered ; and as to what would be the effect of the fact it was offered to prove if they should find it. For reasons stated the third and fourth prayers of the defendant were properly refused

In support of the proposition embodied in its first, second and fifth prayers the defendant relies upon the case of *Ritter* v. *Mut. Life Ins. Co.* 169 U. S. 139. The plaintiffs' counsel distinguishes this case from the one at bar by pointing out the

fact that in the *Ritter case* the insurance was effected for the
benefit of the estate of the assured, while here it was so effected
for the benefit of a third party.    This of itself is not a com-
plete answer to the defendant's contention.    Without review-
ing at length the facts of the case cited from 169 U. S., *supra*,
it may in brief be stated that the doctrine enunciated in that
case was to the effect that, whether there was a clause or con-
dition in a policy of insurance protecting the insurer against
liability in case of self destruction by the assured or not, death
by suicide was a risk not to be considered as being in the con-
templation of the parties to the contract at the time of enter-
ing into it, and was a risk not insured against ; and further,
that for reasons of public policy it is not a risk that can legally
be covered by insurance.    This doctrine does not appear
from the reasoning of the Court to have been stated as appli-
cable only to the state of facts disclosed in the particular
case, but to have been enunciated as one within the purview
and reason of which the particular case fell.    The scope of the
decision was wider, therefore, than that imputed to it by
the plaintiffs' counsel ; and this is found supported by direct
authority.    In the case of *Sup. Com. K. of G. R.* v. *Ains-
worth*, 71 Ala. 436, the Court upon a line of reasoning similar
to that of the *Ritter case, supra*, virtually applied the doctrine
enunciated in the last named case to a state of facts showing
that the plaintiff was the beneficiary of the insurance certificate
in suit which had been issued to her husband by the defend-
ant, a beneficial order ; and that the husband who had taken
out the certificate and nominated his wife, the plaintiff, as the
beneficiary therein had met his death by suicide.    Again in
the case of *Hopkins* v. *N. W. Life Ins. Co.* 94 Fed. Rep. 729,
the Circuit Court for the Eastern District of Pennsylvania held
the doctrine enunciated in the *Ritter case* applicable to a case
in which insurance had been taken out payable to the wife of
the assured if living and in case of her death to his children.
The assured committed suicide, leaving his wife surviving him,
and she was the plaintiff in the suit.    This case was appealed
to the Circuit Court of Appeals (U. S.) 99 Fed. Rep. 199, and

affirmed upon other grounds, the appellate tribunal saying that it was not found necessary to review the grounds on which the decision of the lower Court had been based.

But while the scope and effect of the case of *Ritter* v. *Mutual Life Ins. Co.*, 169 U. S., *supra*, seem to be as stated, and while there are authorities found as indicated, in support of the doctrine enunciated in that case as to the effect of suicide upon a contract of insurance, it appears that the doctrine in question has not generally prevailed. In *Joyce on Insurance*, vol. 3, sec. 2653, it is said, " even though there is no condition against suicide, the deliberate killing of himself by insured while sane and with intent to secure the amount of the insurance to his estate avoids the policy. So if a life policy is taken out by insured not for his own benefit, but for the benefit of a third person, as in case where it is payable to the heirs or widow, and there is no stipulation that it shall be void in case of suicide or self destruction of assured then as a general rule, suicide is no defense, for ordinarily the beneficiary is not bound by acts or declarations of the assured done or made by him after the issue of the policy, unless the same are in violation of some condition in the policy." Again in *Bacon on Ben. Soc. and Ins.*, sec. 337, it is said : " Where the policy, or the constitution and laws of the society or order, contain no provision qualifying the right to recover if the assured or member takes his own life, suicide is not a defense." The statements made by these authors as to the result of the authorities upon the question under consideration are fully sustained by the authorities to which they refer. Some of them may be given : *Mills* v. *Rebstock*, 29 Minn. 380; *Kerr* v. *Union Ben. Assn.*, 39 Minn. 174; *Fitch* v. *American Popular Life Assn.*, 59 N. Y. 557; *Darrow* v. *Family Fund Society*, 116 N. Y. 537; *Morris* v. *Life Assur. Co.*, 183 Pa. 563; *Patrick and others* v. *Excel. Life Ins. Co.*, 67 Barb. 202. It may be further said that, as against the doctrine that reasons of public policy ought to prevent recovery upon a policy of insurance even in the absence of a stipulation or condition that suicide should avoid the policy when the assured takes his

own life, it is found that at least in one instance there is ex-
press statutory enactment that "it shall be no defense that
the assured committed suicide unless it shall be shown to the
satisfaction of the Court, or jury trying the cause, that the
assured contemplated suicide at the time he made application
for the policy, and any stipulation in the policy to the contrary
shall be void." See *Revised Statutes, 1889, of Missouri*, sec.
5855, referred to in 2 *Bacon on Ben. Soc. and Ins.*, sec. 347a.

In the case at bar, as has been seen, the question as to
whether the application for the benefit certificate sued on was
made with the intention to commit suicide, thereby vitiating
in its inception the contract evidenced thereby was submitted
to the jury and was determined by their verdict, but the Court
refused to instruct the jury that, notwithstanding, there was no
condition in the contract between the defendant and the as-
surred that the defendant should be exempt from liability to pay
the insurance to the beneficiary in case the death of the assured
occurred by suicide, the plaintiffs were not entitled to recover if
the jury found the cause of death to be suicide. We think this
ruling is in accordance with what has been the generally ac-
cepted doctrine in regard to suicide as a defense in cases of the
nature of this. In the present case this doctrine can be very
justly applied. The charter of the defendant stated the object of
the incorporation thereunder to be "for beneficial purposes and
to provide an endowment fund to be paid to the family or
friends of a deceased member." Its constitution described
one of the objects of the order to be " to create and maintain
by stated and fixed contributions a benefit fund from which,
on satisfactory evidence of the death of a member, who has
complied with all the lawful requirements of the order, a sum
not exceeding $5,000 shall be paid to his beneficiary or bene-
ficiaries." The whole spirit and design of the order is, ac-
cording to its professed objects, to assist members and relieve
them in sickness while they live and to provide for the needs
of their families and friends in case of their death. Those of
the families and friends of deceased members, who are made
objects of care by the order, have no more control over the

cause of death than have the members of the order. Their need of assistance is the same whatever the case of death. To refuse them this assistance for a cause over which they have no control would not accord with the expressed objects of the order, and would be contrary to the spirit which professedly prompted its organization.

The rulings of the Court below upon all the prayers in the case based on the fact of suicide, being the first and third prayers of the plaintiffs and all of the prayers of the defendant are affirmed for reasons appearing in the foregoing expression of views. The fifth prayer of the plaintiffs which was granted and which prescribes the rule of damages, though embraced in the general exception by the defendant to the action of the trial Court upon the prayers, was not made the subject of criticism either at the oral argument or in the brief of defendant's counsel, and it seems not to have been seriously contested. The ruling upon this prayer will also be affirmed. It follows that the judgment of the Court below must be affirmed.

*Judgment affirmed with costs to appellees.*

(Decided February 8th, 1901.)