# CASES

### DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

#### AT THE

## OCTOBER TERM, 1911.

---

3469, 3487.   MUTUAL LIFE INSURANCE CO. *v.* DURDEN,
and *vice versa.*

1. A waiver is a voluntary relinquishment of a known right, benefit, or advantage, which, except for such waiver, the party would otherwise have enjoyed.
2. A person may lawfully waive the benefit of a statutory provision, where the rights of third persons are not involved, unless such waiver violates public policy.
3. The only authentic and admissible evidence of public policy of a State is its constitution, laws, and judicial decisions.  Courts should guard with jealous care the rights of private contracts, and give to them full effect when possible so to do.  The provisions of the Civil Code (1910), § 4253 et seq., should not be enlarged without convincing and conclusive reasons.
4. In a suit by the beneficiaries of a life-insurance policy against the insurance company, the policy, and such papers as are made a part thereof, contain the contract entered into between the insured and the insurer, and must be looked to, in order to ascertain upon what terms the parties agreed, and what are the rights and liabilities of each.
5. "Death by suicide  .   .   releases the insurer from the obligation of his contract."  Civil Code (1910), § 2500.  Suicide is intentional self-destruction by one who is sane.  If insane or accidental, it is not legally suicide.  The law never presumes suicide from the fact of self-destruction.
6. Where the insurance policy contained the clause, "The company shall not be liable hereunder, in the event of the insured's death by his own act, whether sane or insane, during the period of one year after the issuance of the policy," the benefit of the provisions of the Civil Code (1910), § 2500, was waived, unless such waiver was against public policy.

7. If one should procure life-insurance upon a false promise, made to the insurer at the time of making the contract, that he would not commit suicide, when, in fact, it was his intention to do so, it would be a fraud, entering into the consideration and into the procurement of the contract, which would render the contract void and against public policy, irrespective of the statute.

8. In the absence of the fraudulent intent at the time, it would be a fraud on the public, and against public policy, to declare an insurance policy, such as is referred to above, void as against the beneficiaries when the insured had lived up to his contract. As a matter of public policy it is of great importance to hold the parties to a contract voluntarily made, especially when death has removed one of the parties and closed his lips upon the question raised.

9. In the present case there is no clearly defined public policy opposed to the waiver of the Georgia statute, and there is a clear and vitally important public policy demanding the enforcement of the contract according to its terms and the intention of the parties.

10. If any doubt should exist in regard to the construction of the contract of insurance, the doubt should be resolved in favor of the insured, and the policy should be liberally construed in favor of the validity of the contract and against the insurance company which wrote the policy, and which is presumed to know the Georgia statute, the benefits of which it has waived.

11. When the insurance company defends upon the ground of suicide, the burden is upon the company to establish such contention by a preponderance of the evidence. While the authorities are not uniform upon the question, the weight of authority seems to hold that the presumption against suicide is not overcome by introducing at the trial. the proofs of death, in one of the affidavits composing which the cause of death is stated to be suicide. It is a matter of common knowledge that proofs of death are made under conditions of haste to comply with the company's requirements, and under circumstances not conducive to safe conclusions.

12. The insured died after the expiration of one year from the issuance of the policy, the terms of which are not void as against public policy, and hence the trial court properly directed a verdict for the plaintiff.

DECIDED OCTOBER 7, 1911.

Action on insurance policy; from city court of Covington— Judge Whaley. May 5, 1911.

The Judges of the Court of Appeals being disqualified, Judges Gilbert, of the Chattahoochee circuit, Littlejohn, of the Southwestern circuit, and Conyers, of the Brunswick circuit, were designated to preside.

*James H. Gilbert, Rogers & Knox,* for the insurance company. *Napier & Cox,* contra.

GILBERT, J. This is a suit upon a policy of life-insurance issued by the plaintiff in error upon the life of Mattie L. Durden, brought

by the defendant in error as guardian for the beneficiaries named in the policy. The answer of the plaintiff in error set up various defenses, only one of which is to be considered here under the evidence, viz., that the insured committed suicide, whereby the plaintiff in error was discharged from liability under the policy; thus claiming the protection afforded by section 2500 of the Civil Code of 1910. At the trial the defendant in error made out his prima facie case by proof of the guardianship, and of the insurance contract, and rested. The plaintiff in error introduced in evidence the application for insurance and the proofs of death made to it by the defendant in error, as alleged in his petition, and also rested. The defendant in error offered no further evidence. The case being thus closed, the plaintiff in error moved the court to direct a verdict in its favor, upon the ground that the proof of death, uncontradicted, showed that the insured had committed suicide, and therefore the plaintiff in error, by force of the Civil Code (1910), § 2500, was released from liability under the policy. The motion was denied, and the court directed a verdict in favor of the plaintiff below.

1. After an exhaustive search, we have been unable to find an adjudicated case in any jurisdiction upon the controlling point in this case, and hence the conclusion must be reached from premises most of which fortunately are well established and comparatively uniform. As we view the matter, the correct conclusion depends upon whether an insurance company may by contract waive the benefits of section 2500 of the Civil Code (1910), and whether the contract of insurance in the present case constitutes such a waiver. It is insisted by the plaintiff in error that such a waiver would be void and of no effect, even if attempted, as against public policy; that such contracts, if allowed, would encourage suicide, and would result in legalizing insurance against self-destruction. "A waiver is a voluntary relinquishment of a known right, benefit, or advantage, which, except for such waiver, the party would otherwise have enjoyed." *Kennedy* v. *Manry*, 6 *Ga. App.* 819 (66 S. E. 31).

2. A person may lawfully waive the benefit of a statutory provision where the rights of third persons are not involved, unless such waiver violates public policy. 9 Cyc. 480.

3. The only authentic and admissible evidence of public policy of a State is its constitution, laws, and judicial decisions. As the habits, opinions, and wants of the people vary with the times, so public policy may change with them. So, because these habits, opinions, and wants are different in different places, what may be against public policy in one State or country may not be so in another. "It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because, if there is one thing which more than another public policy requires, it is that men of full age and of competent understanding, shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by the courts of justice. Therefore you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract." 9 Cyc. 482, 483, and note. The provisions of the Civil Code (1910), § 4253 et seq., should not be enlarged without convincing and conclusive reasons. In the case of *Phenix Insurance Co.* v. *Clay,* 101 *Ga.* 332 (28 S. E. 854, 65 Am. St. Rep. 307), Chief Justice Simmons has forcefully summed the whole matter up in these words: "It is well settled that contracts will not be avoided by the courts as against public policy, except where the case is free from doubt, and where an injury to the public interest clearly appears."

4. In a suit by the beneficiaries against a life-insurance company the policy and such papers as are made a part thereof must be looked to in order to ascertain upon what terms the parties agreed, and what are the rights and liabilities of each. Civil Code (1910), § 2471; *Mass. Life Asso.* v. *Robinson,* 104 *Ga.* 268 (30 S. E. 918, 42 L. R. A. 261).

5. "Death by suicide . . releases the insurer from the obligation of his contract." Civil Code (1910), § 2500. Suicide is intentional self-destruction by one who is sane. If one is insane, his self-destruction can not legally be suicide, nor is self-destruction legally suicide when due to accident. The law never presumes suicide from the fact of self-destruction alone; but, upon the contrary, it does presume that death ensues from natural causes. *Life Asso.* v. *Waller,* 57 *Ga.* 535; *Jenkins* v. *National Union,* 118 *Ga.* 588 ('5 S. E. 449). Self-destruction is never a legal presumption.

The fact that the insured committed suicide is not of itself evidence of insanity. Upon the contrary, where it is shown that the insured committed suicide, the law in this State, as well as in most other States, presumes sanity. *Merritt* v. *Cotton States Life Ins. Co.,* 55 *Ga.* 103. Were this question not settled in Georgia, the writer would have no hesitation in holding that suicide is itself evidence of an unbalanced mind. 4 Wigmore, Ev. § 2500 (c). "So strong is the instinctive love of life in the human breast, so uniform the efforts of men to preserve their existence, that suicide can not be presumed. It is contrary to the general conduct of mankind." Travelers' Insurance Co. *v.* McConkey, 127 U. S. 661 (8 Sup. Ct. 1360, 32 L. ed. 308) ; Connecticut Mutual Life Insurance Company *v.* Akens, 150 U. S. 475 (14 Sup. Ct. 155, 37 L. ed. 1148). In *Buchanan* v. *Buchanan,* 103 *Ga.* 92 (29 S. E. 609), Justice Cobb said: "Self-destruction is a circumstance tending to show mental disorder, but it is not conclusive proof of its existence."

6. Where the policy contained the clause, "the company shall not be liable hereunder in the event of the insured's death by his own act, whether sane or insane, during the period of one year after the issuance of the policy," the benefit of code section 2500 was waived, unless such waiver was against public policy. If it is established that the insured came to his death by his own intentional act, nothing else appearing, it is presumed that the act was that of a sane man. Consequently, it becomes necessary to determine what effect the clause just quoted has upon Civil Code (1910), § 2500, which itself has reference only to intentional self-destruction by one who is sane. The clause referred to may be divided into two parts, one having reference to the act of one when sane, and the other having reference to the act of one when insane; and, eliminating that part which has reference to an insane act, for present purposes, the clause would read as follows: "The company shall not be liable hereunder in the event of insured's death by his own act during the period of one year after the issuance of the policy." Thus it will be seen that the company was dealing directly and specifically in the policy itself with the matter of self-destruction by one sane at the time, for its own protection, and presumably for the purpose of securing business, and entered into a contract which provided that the company should not be liable if the insured died by his own act within a period of one year.

The company is presumed to have been aware of the provision of the Civil Code (1910), § 2500, and, unless it was the purpose of the company in this contract to waive the benefit of said code section, the language employed would have been redundant. In construing the contract, the intention is to be collected, not from detached parts of the instrument, but from the whole of it. And all parts of the writing, and every word in it, will, if possible, be given effect. 9 Cyc. 579, 580. No word in a contract is to be treated as a redundancy, if any meaning reasonable and consistent with other parts can be given to it. Id. 583.

7. If one should procure life-insurance upon a false promise, made to the insurer at the time of making the contract, that he would not commit suicide, when, in fact, it was his intention at the time so to do, it would be a fraud, entering into the consideration and into the procurement of the contract, which would render the contract void and against public policy, irrespective of section 2500 of the Civil Code (1910).

8. In the absence of such a fraudulent intent at the time of making the contract, it would be a fraud on the public and against public policy to declare a policy such as is referred to above void as against the beneficiaries, when the insured did live up to the terms of his contract. Supreme Lodge *v.* Trebbe, 74 Ill. App. 545; Campbell *v.* Supreme Conclave, 66 N. J. Law, 274 (49 Atl. 550, 54 L. R. A. 576); Supreme Conclave *v.* Miles, 92 Md. 613 (48 Atl. 845, 84 Am. St. R. 528). As a matter of public policy it is of great importance to hold the parties to a contract voluntarily made, especially when death has removed one of the parties and closed his lips upon the questions raised by the company when sued for the amount of the policy. When a contract grows immediately out of and is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it. But a contract may be valid, notwithstanding it is remotely connected with an independent illegal transaction, which, however, it is not designed to aid or promote. *Phenix Insurance Co.* v. *Clay,* 101 *Ga.* 332, 333 (28 S. E. 853, 65 Am. St. R. 307). The record in the present case does not disclose anything to indicate an intention on the part of the insured, at the time of making the contract, to die by her own hand. "If performance by an insurer is in general terms conditioned on the death of the insured, there seems no valid reason why

death by committing suicide should not be included; and such is the general doctrine." Cooke, Life Ins. § 41. A contract of life-insurance is not a contract of indemnity, and there is no force in any argument derived from contracts of indemnity. "Granting the inherent wrongfulness of suicide, which is matter for the mor-alist rather than the judge, the doctrine derived from contracts of indemnity fails when applied thereto. No one in this world can derive a benefit by his own death. By that final event all earthly profit ends for him to whom it comes. He is for this life equally beyond gain and loss, and to him the rules that govern mundane intercourse become no longer applicable. Those who derive the benefit will have done no wrong. But it is said that suicide is a fraud on the insurer. To procure insurance with intent to commit suicide is a fraud on the insurer that should defeat recovery at the option of the insurer, and, with all the incidents of a rescission, will avoid the contract, even as against beneficiaries or assignees. Smith v. National Benevolent Society, 123 N. Y. 85 (25 N. E. 197, 9 L. R. A. 616). But to argue that suicide not previously intended is such a fraud as to defeat recovery is to beg the very question of what is the contract; and the argument assumes that insurance rates are fixed upon a basis excluding death by suicide, while, as we have seen, the contrary must be the case, for the ex-perience tables include all forms of death. Moreover, it would be next to impossible to fasten the fraudulent intent." Campbell v. Supreme Conclave, 66 N. J. Law, 274 (49 Atl. 550, 54 L. R. A. 576). So far as the writer has been able to discover, every case holding a contrary doctrine has been based upon the case of Ritter v. Mutual Life Insurance Co., 169 U. S. 139 (18 Sup. Ct. 300, 42 L. ed. 693); as, for instance, the case of Hopkins v. Northwestern Life Insurance Co., 94 Fed. 729, where a United States circuit court, being bound by the Ritter case, held likewise. A careful examination of the Ritter case will disclose the fact that the proof was plenary that the insurance was procured with intent to commit suicide.

9. In the present case there is no clearly defined public policy opposed to the waiver of the Georgia statute. In Georgia, as well as in most of the States of the American Union, suicide is not a crime. Formerly, by the common law of England, the penalty at-tached to an act of suicide consisted in giving the body of the crim-

inal an ignominious burial in the highway, and in the forfeiture of his lands and chattels to the king; but the law was later altered, so that now the only consequence following an act of self-destruction is the denial of Christian burial. In this country there is generally neither the forfeiture of goods nor other penalty attached to suicide. The Athenian law provided for cutting off the hand which committed the act. Under the Massachusetts act of 1660 (Colonial Laws [ed. 1672], p. 137), suicides were denied the privilege of Christian burial, and were directed to be buried in the highway, with a cart-load of stones laid upon the grave, "as a brand of infamy." 37 Cyc. 521, 522.

10. If the policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. Thompson v. Phenix Insurance Co., 136 U. S. 287-297 (10 Sup. Ct. 1019, 34 L. ed. 408). Deemer, J., in Goodwin v. Provident Savings Life Asso., 97 Iowa, 226 (66 N. W. 157, 32 L. R. A. 473, 59 Am. St. R. 411), uses the following language, which is quoted with approval by Justice Cobb in the case of Mass. Life Asso. v. Robinson, 104 Ga. 279 (30 S. E. 928, 42 L. R. A. 261). "The tenets established for the guidance of courts in such matters are well understood, and no one is better established than that in all cases the policy must be liberally construed in favor of the assured, so as not to defeat, without a plain necessity, his claim for indemnity." That was a case in which the company defended itself on the ground of suicide by the insured.

11. When the insurance company defends upon the ground of suicide, the burden is upon the company to establish such contention by a preponderance of the evidence. While the authorities are not uniform upon the question, the weight of authority seems to hold that the presumption against suicide and in favor of death from natural causes is not overcome by the introduction at the trial of the proofs of death, or even of the verdict of a coroner's jury. 25 Cyc. 930, 931; Union Mutual Life Insurance Company v. Payne, 105 Fed. 172 (45 C. C. A. 193) ; Supreme Lodge v. Beck, 94 Fed. 751 (36 C. C. A. 467) ; Goldsmith v. Mutual Life Insurance Company, 102 N. Y. 486 (7 N. E. 408). Contra, see Spruill v. Northwestern Mutual Life Insurance Company, 120 N. C. 141 (27 S. E. 39) ; Newark Mutual Life Insurance Company

*v.* Newton, 22 Wall. 32 (22 L. ed. 793). In the present case the cause of death is stated to be suicide, in one of the affidavits composing the proofs of death. It is a matter of common knowledge that proofs of death are made under conditions of haste, for the purpose of complying with the rules of the company, and are generally made under circumstances, which are not conducive to accuracy. The conclusions are frequently stated from imperfectly formed views, and frequently from the statements of others.

12. The insured in the present case died after the expiration of one year from the issuance of the policy. There is nothing to indicate a fraudulent intent at the time of making the contract upon the part of the insured. The construction of the policy under the plain requirements of the law unquestionably shows a waiver of the benefits of the Georgia statute by the insurance company; and, such waiver not being void as against public policy, the trial court properly directed a verdict for the plaintiff. This is true independently of the legal presumption that the trial court was without error in the judgment rendered.

From the above it follows that the judgment on the main bill of exceptions must be affirmed; and, inasmuch as the result of this is to leave the verdict and judgment below undisturbed, the cross-bill of exceptions is dismissed.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed.*

CONYERS, J., dissenting. 1. In my opinion both sound reason and the weight of authority are against the conclusion that an effective waiver resulted from the language of the contract. This would be true, I think, even if there were no positive declaration of our legislature upon the subject. As Mr. Justice Harlan says in the Ritter case, 169 U. S. 154 (18 Sup. Ct. 305, 42 L. ed. 693): "A contract the tendency of which is to endanger the public interest or injuriously affect the public good, or which is subversive of sound morality, ought never to receive the sanction of a court of justice or be made the foundation of its judgment. If, therefore, a policy taken out by the person whose life is insured, and in which the sum named is made payable to himself, his executors, administrators, or assigns, expressly provided for the payment of the sum stipulated when or if the assured in sound mind took his own life, the contract, even if not prohibited by statute, would be held to be

against public policy, in that it tempted or encouraged the assured to commit suicide in order to make provision for those dependent upon him or to whom he was indebted." But, aside from this, our legislature (Civil Code (1910), § 2500) has declared such a contract illegal. This is a positive and long-established declaration of the policy of the State. I can not believe that in enacting this principle of law the legislature had in mind the rights of individuals that could be waived by contract. In fact, it was not dealing with private rights at all, but with the public welfare; and the principle announced is a sound moral timber in the social structure of the State. An implied waiver is not more effective than an express contract, and therefore I think it unnecessary to decide whether a waiver would or would not result from language such as is used in the contract.

2. The proofs of death are the mechanical foundation of the plaintiff's suit. Without them, under the contract, his suit could not be maintained. He could not, therefore, object to their introduction in evidence by the defendant. They showed that the cause of death was suicide; and there was no further evidence upon the subject by either party. The fact that the proofs of death were made hastily and without forethought would not affect their character as admissions against the plaintiff's interest, requiring from him a showing to the contrary, if they were untrue.

While, if it were an open question, I might hold otherwise, our Supreme Court has held in *Merritt* v. *Cotton States Life Insurance Co.*, 55 *Ga.* 103 (6), that proof of suicide, without more, does not authorize a presumption that the deceased was insane at the time of the act. This ruling, though by a partial bench of only two Judges, is binding upon this court.

It follows from the above that the judgment of the trial court should be reversed on the main bill, and affirmed on the cross-bill of exceptions